## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LENNY FEINBERG,<br>    Plaintiff, | :<br>:<br>:   CIVIL ACTION<br>: |
| v. | :   NO. 2:09-cv-1536-WY<br>: |
| DAVID A. ECKELMEYER and ROBERT FEINBERG,<br>    Defendants. | :<br>:<br>: |

**Memorandum**

YOHN, J.                                                                                  December 16, 2009

Plaintiff, Lenny Feinberg, brings this action for damages and injunctive relief against his brother and former business partner, Robert "Randy" Feinberg, and their former bookkeeper, David A. Eckelmeyer.  Defendants move to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(6).  They argue that a release contained in a Separation Agreement between the Feinberg brothers bars plaintiff's claims and, alternatively, that plaintiff fails to state any claims upon which the court can grant relief.  For the reasons discussed below, (1) I will deny defendants' motion to dismiss plaintiff's claims for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), for breach of fiduciary duty, and for civil conspiracy, but (2) I will grant defendants' motion to dismiss plaintiff's claims for misappropriation of trade secrets and for invasion of privacy, without prejudice for plaintiff to file an amended complaint within twenty days.

## I.      Factual And Procedural Background

Plaintiff alleges that defendants conspired to copy and to destroy his confidential business and personal information (1) to gain advantage over him in the negotiation of the Separation

Agreement that split the Feinberg brothers' shared business ventures, and (2) to gain advantage over him in competition over future business. (Compl. 1-2.) Plaintiff seeks injunctive relief, damages, attorneys' fees, and punitive damages. (Id. ¶ 2.) Plaintiff brings five causes of action: Count I alleges violation of the CFAA; Count II alleges breach of fiduciary duty; Count III alleges violation of Pennsylvania's Uniform Trade Secrets Act ("PUTSA"); Count IV alleges invasion of privacy; and Count V alleges a civil conspiracy. (Id.)

### A.    The Separation Of The Feinberg Brothers' Partnership Interests

Plaintiff alleges in his complaint that he and Randy Feinberg shared partnerships in real estate development ventures for more than twenty years. (Id. ¶¶ 4, 6.) He claims that "effective on June 30, 2008," he and Randy Feinberg "separated most of their partnership interests" (hereinafter, the "Feinberg brothers' partnership interests") pursuant to a Separation Agreement.[1] (Id. ¶ 7.) He alleges that he "agreed to pay $1 Million and his interests in five properties known as 'Locker Room Self-Storage' in exchange for [Randy] Feinberg's interests in various partnerships, and then adjustments to incomes/debits from the transferred partnerships based on rent, property taxes and property expenses through June 30,2008 [sic] which were being calculated and adjusted by Defendant Eckelmeyer from July through September 2008." (Id. ¶ 13.)

### B.    The Feinberg Brothers' Employment Of Eckelmeyer

Plaintiff alleges that Eckelmeyer was the accountant and bookkeeper for the Feinberg brothers' partnerships until June 30, 2008. (Id. ¶ 10.) According to plaintiff, the parties agreed

---

[1]  The Separation Agreement, although effective June 30, 2008, was apparently signed in early November 2008. The exact status of the agreement of the parties and the nature of it on June 30, 2008, or at any later time prior to the execution of the Separation Agreement is not specified by the parties.

that after June 30, 2008, Eckelmeyer would continue to work for both plaintiff and Randy Feinberg, splitting his time equally between the two, "but not disclosing any confidential business information between the former partners other than as necessary for the final accounting on the transferred partnership interests." (Id. ¶ 14.) Plaintiff alleges that he trusted Eckelmeyer to remain loyal to him during the period of "the crucial transition accounting." (Id. ¶ 20.) Plaintiff further alleges that Eckelmeyer "repeatedly represented" that he understood his obligation to protect plaintiff's trade secrets and confidential and proprietary information from all unauthorized use and not to misappropriate such information. (Id. ¶ 21.) Plaintiff alleges that after October 3, 2008, he no longer employed Eckelmeyer, but that Randy Feinberg continued to do so. (Id. ¶¶ 5, 6, 10.)

Plaintiff alleges that from June 30 to October 3, 2008, Eckelmeyer had access to one of plaintiff's computers but "was not authorized to access information unrelated to the partnerships except with Plaintiff's express consent" (Id. ¶ 16.) Plaintiff also alleges that Eckelmeyer "did not have access to Plaintiff's personal computer in Plaintiff's office." (Id. ¶ 17.) Plaintiff alleges that after October 3, 2008, Eckelmeyer "had no authority to access the Plaintiff's Bala Cynwyd office, or any of Plaintiff's files without Plaintiff's consent." (Id. ¶ 25.)

C.     The Final Accounting Of The Feinberg Brothers' Partnership Interests

Plaintiff alleges that he relied on Eckelmeyer "to provide him with accurate and complete financial information concerning the revenues, taxes, expenses and financial status of the partnerships." (Id. ¶ 19.) Plaintiff alleges that "[i]n reasonable reliance" on Eckelmeyer's financial reports, "Plaintiff agreed to resolve the final accountings for the transferred partnerships, including a resolution of real estate tax issues on two Philadelphia properties being transferred to Plaintiff." (Id. ¶ 22.) Plaintiff claims that based on Eckelmeyer's calculations

plaintiff "agreed to a final payment to be made at month-end October 2008 . . . ."  (Id. ¶ 23.)

According to plaintiff, in early November 2008, after the Feinberg brothers had reached "final

accounting numbers and set-offs in their previously transferred partnerships and assets," plaintiff

signed the Separation Agreement and agreed to pay $1 million to Randy Feinberg "in reliance

upon Defendants' good faith, alleged full disclosures and accountings."  (Id. ¶ 26.)

### D.     Defendants' Alleged Conspiracy

Plaintiff claims that in early 2009 he began to question Eckelmeyer's calculations

regarding at least one property subject to the Separation Agreement.  (Id. ¶ 27.)  Plaintiff claims

that in reviewing the data for the calculations, he "reviewed electronic communications and

discovered that Defendants had been secretly conspiring to join forces to harm him and directing

Defendant Eckelmeyer to violate his fiduciary duties to Plaintiff."  (Id. ¶ 28.)  Plaintiff claims

that the goal was "to assist Defendants' adversarial position in financially sensitive negotiations

in June to October 2008, and now to aid their business competition against Plaintiff."  (Id. at 1.)

Plaintiff explains further that defendants conspired "to manipulate the value of set-offs and

accounting reconciliations arising from the separation of partnership interests in the third quarter

2008 by, *inter alia*, illegally accessing, deleting and copying Plaintiff's trade secrets, proprietary

information, business and personal data from Plaintiff's computers" and that defendants

conspired "to steal his trade secrets and conceal material information relating to the financial

terms of the Separation Agreement."  (Id. ¶¶ 1, 48.)

Plaintiff claims that, in furtherance of the conspiracy, defendants:  (1) copied and

destroyed confidential trade secrets and other information through unauthorized use of plaintiff's

computers, including evidence of a $150,000 loan from Randy Feinberg to Eckelmeyer and other

evidence of the alleged conspiracy (id. ¶¶ 29, 36, 38, 40-41, 44-46); (2) concealed from plaintiff

an "accountant's introduction" to financial information concerning the Feinberg brothers' partnership interests (id. ¶ 30); (3) convinced plaintiff that taxes had been paid on two properties Randy Feinberg was transferring to him (id. ¶ 33); and (4) read a privileged communication between plaintiff and his lawyers regarding the tax and indemnity treatment of the two properties (id. ¶ 34).

### E.    The Separation Agreement

Defendants attached to their motion a copy of the Separation Agreement that plaintiff references throughout his complaint.  (Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Complaint ("Defs.' Mem.") Ex. B.)

The Separation Agreement defines its "Effective Date" as "the 30th day of June, 2008" and states that "[t]he closing for all transactions under this Agreement (the 'Closing') shall be held on October 27, 2008, and be effective as of June 30, 2008."  (Id. at 3.)  The Separation Agreement describes actions the Feinberg brothers agreed to take "[b]etween the Effective Date of this Agreement and the date of Closing" including execution and delivery of stock powers, resignation forms, resolutions, dissolution documents, and withdrawal and indemnification agreements.  (Id. at 9-10.)  The Separation Agreement contains exhibits in which Randy Feinberg agreed, effective June 30, 2008, to sell "all of his shares of capital stock of Feinberg and Feinberg Administration, Inc., a Pennsylvania corporation ("F&F"), representing a 50% ownership interest" and to resign as an employee of F&F.  (Id. at internal exhibits F and H.)  The Separation Agreement states that the sale would take place "[a]t the Closing."  (Id. at 5.)

The Separation Agreement also contains mutual releases of the Feinberg brothers.  (Id. at

13.)  Plaintiff's release of Randy Feinberg states as follows:

> Lenny [Feinberg] . . . hereby releases, remises, and forever discharges Randy
> [Feinberg] and his heirs, executors, administrators and assigns (each a "Randy
> Releasee"), of and from any and all actions, causes of action, suits, claims,
> demands, accountings, covenants, contracts, agreements, debts, liabilities and
> obligations of any nature, fixed or contingent, known or unknown, whether at law
> or in equity, by reason of any event, occurrence, circumstances or matter of any
> nature that occurred, arose or existed at any time on or before the Closing date;
> **provided, however, that this release shall not in any manner affect or release
> any agreement, liability or obligation** of Randy [Feinberg] or any Randy
> Releasee (I) under this Agreement or the Related Agreements, or (ii) **for fraud or
> intentional misrepresentation**.

(Id.) (Emphasis added.)

## II.    Standard Of Review

### A.    The Factual Allegations And Legal Conclusions In The Complaint

The Third Circuit recently encapsulated the "two-part analysis" by which a court should

consider a motion to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.  The District
> Court must accept all of the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show that the plaintiff
> has a 'plausible claim for relief.'  In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief.  A complaint has to "show" such an
> entitlement with its facts. . . . This 'plausibility' determination will be 'a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citations omitted) (quoting

Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949-50 (2009)); see also Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007) (the complaint must "'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'") (citing Conley v. Gibson, 355 U.S.

41, 47 (1957)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In addition, a plaintiff must plead all allegations of fraud with particularity. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417-18 (3d Cir. 1997) (citing Fed. R. Civ. P. 9(b)).

**B.      Consideration Of Defendants' Proffered Copy Of The Separation Agreement**

Although plaintiff references and relies upon the Separation Agreement throughout his complaint, he did not attach a copy to the complaint itself. He objects to interpretation of the Separation Agreement at this stage as premature. (Plaintiff's Opposition to Defendants' Joint Motion to Dismiss Complaint ("Pl.'s Opp'n") 5-7.)

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider, however, a "document *integral to or explicitly relied* upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." Burlington Coat Factory, 114 F.3d at 1426 (emphasis in original; quotation and citations omitted); see also Pension Ben., 998 F.2d at 1196 (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").[2]

---

[2] Plaintiff does not dispute the authenticity of defendants' proffered copy of the Separation Agreement.

The Separation Agreement is integral to and explicitly relied upon in the complaint. For example, plaintiff claims that he relied upon Eckelmeyer's representations concerning the final accounting of the Feinberg brothers' partnership interests when he negotiated the Separation Agreement, allegations that in turn form the basis of plaintiff's claims for violations of the CFAA and for breach of fiduciary duty. (Compl. ¶¶ 19, 22, 23, 26, 49-70.) I will therefore consider defendants' proffered copy of the Separation Agreement, within the standards set forth above for evaluating a motion to dismiss, without converting defendants' motion to one for summary judgment.

## III. Discussion

Defendants argue that the release of Randy Feinberg bars plaintiff's claims and that, regardless, plaintiff fails to state a claim upon which the court can grant relief. (Defs.' Mem. 7-9, 9-17.)[3] Plaintiff argues that the release excepts "any agreement, liability or obligation . . . for fraud or intentional misrepresentation" and that, therefore, the release does not cover plaintiff's claims. (Pl.'s Opp'n 6-7.) Plaintiff also argues that he stated his claims properly. (Id. at 7-16.)

Accepting plaintiff's presentation of the facts as true, as I must for this purpose, including plaintiff's interpretation of the exception to the release, I will deny defendants' motion to dismiss plaintiff's claims for violation of the CFAA and for breach of fiduciary duty. Plaintiff has set forth sufficient allegations of fraud and intentional misrepresentation in his complaint to raise at least a question of whether these two claims are covered by the exception to the release. Plaintiff has also alleged sufficient facts at this stage regarding the elements of these two claims. I will,

---

[3] Defendants argue that the release applies to plaintiff's claims against Eckelmeyer as well as plaintiff's claims against Randy Feinberg because, according to the complaint, Eckelmeyer was acting as Randy Feinberg's agent. (Defs.' Mem. at 1, 8.) Plaintiff does not dispute this argument.

however, grant defendants' motion to dismiss plaintiff's claims for misappropriation of trade secrets and for invasion of privacy. Plaintiff has not specifically linked these two claims to any allegations of fraud or intentional misrepresentation. Accordingly, under any reasonable reading of the release, including plaintiff's own interpretation, neither of these two latter claims is within the exception.

Finally, I will deny defendants' motion to dismiss plaintiff's claim for conspiracy. First, it is unclear whether the intracorporate conspiracy doctrine, which holds that a corporation cannot conspire with its employees, applies in this case. It is not clear at this stage whether Eckelmeyer was an agent of a corporation, a partnership, or an individual. Second, I find that plaintiff has properly stated a claim for damages as to this cause of action.

### A. The Exception To The Release May Cover Plaintiff's Claims For Violation Of The CFAA And For Breach Of Fiduciary Duty

Plaintiff argues that through the exception to the release for "any agreement, liability or obligation . . . for fraud or intentional misrepresentation," the Feinberg brothers' "intentions were clearly to *exclude* any claims for fraud." (Pl.'s Opp'n 6-7.) (Emphasis in original.) The words, of the exception are, however, open to interpretation, particularly when contrasted with the broader language of the overarching release. That broad language lists as released a string of matters beyond "any agreement, liability or obligation":

> [Lenny Feinberg releases Randy Feinberg from] any and all **actions, causes of action, suits, claims, demands, accountings, covenants, contracts,** agreements, **debts,** liabilities and obligations of any nature, fixed or contingent, known or unknown, whether at law or in equity . . . .

(Defs' Mem. Ex. B.) (Emphasis added.)

It is unclear at this stage why, out of the many matters the parties listed as released, the parties chose to list in the exception only "any agreement, liability or obligation." Furthermore,

because the parties excepted only "any agreement, liability or obligation," it is also unclear how broad the parties intended the subsequent phrase "for fraud or intentional misrepresentation" to be. Did the parties intend to exclude only the cause of action of fraud? Or did the parties intend to exclude any cause of action that contained even the slightest factual allegation related to fraud or intentional misrepresentation? Or did the parties intend something else?

Such questions may be answered at a later stage in this case, after discovery. One issue concerning the exception is, however, clear at this time: the exception could not apply to claims that do not involve any factual allegations of "fraud or intentional misrepresentation" at all. In other words, under any reasonable interpretation of the exception to the release, including plaintiff's own interpretation, the release bars any cause of action that does not, at a minimum, involve factual allegations related to fraud or intentional misrepresentation.

  1. **Plaintiff's Claims For Violation Of The CFAA And For Breach Of Fiduciary Duty Involve Allegations Related To Fraud And Intentional Misrepresentation**

I find that, at this stage, plaintiff's claims for violation of the CFAA and for breach of fiduciary duty are arguably covered by the exception to the release. These claims involve allegations that defendants fraudulently misrepresented the value of the Feinberg brothers' partnership interests and fraudulently induced plaintiff into accepting the Separation Agreement.

In the preamble to his complaint, plaintiff accuses defendants of "hacking into Plaintiff's personal and business computers to delete and copy Plaintiff's highly confidential trade secrets and financial data **to assist Defendants' adversarial position in financially sensitive negotiations** in June to October 2008 . . . ." (Id. at 1.) (Emphasis added.) Plaintiff further alleges that defendants "conspired **to manipulate the value** of set-offs and accounting reconciliations arising from the separation of partnership interests in the third quarter 2008 by,

*inter alia*, illegally accessing, deleting and copying Plaintiff's trade secrets, proprietary information, business and personal data from Plaintiff's computers." (Id. ¶ 1.) (Emphasis added.) Plaintiff claims that the object of the conspiracy was "to steal his trade secrets and **conceal material information relating to the financial terms of the Separation Agreement**." (Id. ¶ 48.) (Emphasis added.)

> In support of his claim for violation of the CFAA, plaintiff alleges that:
>
> Defendant Eckelmeyer, acting at Defendant Feinberg's direction and approval as his employer, knowingly and **with intent to defraud, accessed protected computers in Plaintiff's office**, as defined by the CFAA, without authorization and/or exceeded authorized access, and by means of such conduct **furthered the intended fraud** and obtained Plaintiff's valuable trade secrets and confidential information **for use by Defendant Feinberg**.

(Compl. ¶ 52.) (Emphasis added.)  Plaintiff's description of defendants' alleged fraud (i.e., "with intent to defraud" and "furthered the intended fraud") skirts the kind of bare legal conclusions that will not pass the muster of Rule 12(b)(6).  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.  Plaintiff is merely repeating the elements of a CFAA claim under § 1030(a)(4):

> A claim under CFAA § 1030(a)(4) has four elements: (1) defendant has accessed a "protected computer;" (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and **with "intent to defraud"**; and (4) as a result has **"further[ed] the intended fraud** and obtain[ed] anything of value."

P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC., 428 F.3d 504, 508 (3d Cir. 2005) (quoting 18 U.S.C.A. § 1030(a)(4)) (emphasis added).  As noted above, however, the complaint earlier details defendants' alleged fraud and does so specifically in relation to defendants' allegedly unauthorized access of plaintiff's computers.  (Compl. at 1 and ¶¶ 1, 48.) Such allegations of fraud are sufficient, at this stage, to raise a plausible inference that the exception to the release covers Count I of the complaint, for violation of the CFAA.

In support of his claim for breach of fiduciary duty, plaintiff alleges that:

> Defendants **violated the Computer Fraud and Abuse Act**, invaded Plaintiff's privacy and conspired **to conceal material information** from Plaintiff concerning his financial information **necessary to fairly evaluate the terms of the set-offs and reconciliations** required by the Separation Agreement.

(Compl. ¶ 59.) (Emphasis added.) Plaintiff's description here of the alleged fraud, including the alleged violation of the CFAA, provides a basis for the required elements of a breach of fiduciary duty claim for failure "to act in good faith and solely for the benefit of plaintiff" and for injury.[4] Such allegations of fraud are sufficient, at this stage, to raise a plausible inference that the exception to the release covers Count II of the complaint, for breach of fiduciary duty.

> **2.    Plaintiff's Claims For Misappropriation Of Trade Secrets And Invasion Of Privacy Do Not Involve Allegations Related To Fraud Or Intentional Misrepresentation**

Unlike plaintiff's claims for violation of the CFAA and for breach of fiduciary duty, plaintiff's complaint does not specifically base his claims for misappropriation of trade secrets and for invasion of privacy on alleged acts of fraud or intentional misrepresentation. (Compl. 15-18.) Therefore, as pleaded, these two claims do not fit within the exception to the release, even under plaintiff's interpretation of the clause.

Although plaintiff's complaint incorporates into these two claims all preceding paragraphs of the complaint (id. ¶¶ 71, 80) – which would include his description of defendants' conspiracy to defraud him – such incorporation is not of sufficient particularity to put defendants

---

[4]  The elements the plaintiff must prove for a breach of fiduciary duty claim are:

1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he was employed; 2) that the plaintiff suffered injury; and 3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about the plaintiff's injuries.

McDermott v. Party City Corp., 11 F.Supp.2d 612, 626 n.18 (E.D. Pa.1998).

on notice that these two claims are based on fraud or intentional misrepresentation.  Burlington

Coat Factory, 114 F.3d at 1417-18 (a plaintiff must plead all allegations of fraud with

particularity) (citing Fed. R. Civ. P. 9(b)); Twombly, 550 U.S. at 570 (the complaint must "'give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'") (citing

Conley, 355 U.S. at 47); Fowler, 578 F.3d at 210-211 (a complaint must show plaintiff's

entitlement to relief with its facts) (citing Iqbal, 129 S.Ct. at 1949-50).  Nowhere in the portions

of his complaint devoted to misappropriation of trade secrets and invasion of privacy does

plaintiff actually mention that any allegation of fraud is related to these two claims.

Plaintiff does not even contend in his opposition to defendants' motion that his claim for

misappropriation of trade secrets involves allegations of fraud or intentional misrepresentation.

In his opposition, plaintiff describes the damages he suffered and the ongoing threat from

defendants' alleged misappropriation of trade secrets as stemming not from any acts of fraud or

intentional misrepresentation but from unfair competition – the "advantage" Randy Feinberg may

have gained "in his now separate business, over the Plaintiff's business."  (Pl.'s Opp'n p. 10.)

Plaintiff does contend in his opposition that one reason defendants invaded his privacy

was to delete files "in an effort to cover the tracks of their fraudulent conduct."  (Id. at 11.)  Even

if this contention would have been sufficient to place plaintiff's claim for invasion of privacy

within the exception to the release, however, nothing like this contention actually appears in

plaintiff's complaint within the context of the invasion of privacy claim.  Furthermore, even

plaintiff's opposition itself fails to link this contention to any element of invasion of privacy.

Indeed, fraud and intentional misrepresentation are not necessary elements of either of these two claims. The elements of a misappropriation of trade secrets claim in Pennsylvania are:

> (1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff.

Moore v. Kulicke & Soffa Indus., Inc., 318 F.3d 561, 566 (3d Cir. 2003). For invasion of privacy, the tort of intrusion upon seclusion supplies the elements, as follows:[5]

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B. None of the elements of these two claims explicitly involves fraud or intentional misrepresentation. In other words, plaintiff could conceivably prove defendants liable for misappropriation of trade secrets or for invasion of privacy without proving any allegations related to fraud or intentional misrepresentation. Without specific allegations in the complaint of fraud or intentional misrepresentation that would serve to prove these two claims, no reasonable person could conclude that the claims are covered by the exception in the release for "any agreement, liability or obligation . . . for fraud or intentional misrepresentation."

Accordingly, I will grant defendants' motion with respect to Counts III and IV of the complaint, for misappropriation of trade secrets and for breach of fiduciary duty, but without prejudice to plaintiff's right to amend the complaint within twenty days to try to cure its defects.

---

[5] For claims of invasion of privacy, Pennsylvania has adopted the tort of intrusion upon seclusion as set forth in the Restatement (Second) of Torts § 652B and its comments. Kline v. Sec. Guards, Inc., 386 F.3d 246, 259-60 (3d Cir. 2004) (citing Harris v. Easton Publ'g Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984)).

**B.      Plaintiff Has Properly Stated A Claim For Violation Of The Computer Fraud And Abuse Act**

Defendants also argue that plaintiff fails to allege sufficient facts to entitle him to relief for his claim under the CFAA.  Defendants argue that Eckelmeyer had authority to use plaintiff's computers until the date the Feinberg brothers signed the Separation Agreement in November 2008.  (Defs.' Mem. 9-11; Defendants' Reply in Support of Their Joint Motion to Dismiss Complaint ("Defs.' Reply") 4-6.)  Plaintiff argues that Eckelmeyer did not have such authority. (Pl.'s Opp'n 7-9.)  I conclude that whether Eckelmeyer had authorization to access plaintiff's computers after June 30, 2008, is a question of fact that cannot be resolved at this stage.

Defendants' theory is that the computers belonged to the Feinberg brothers' partnership interests, that Randy Feinberg did not cease to be an owner of those interests until he signed the Separation Agreement, and that therefore Randy Feinberg and his agents (such as Eckelmeyer) had authority to use the computers until that date.  (Defs.' Mem. 10-11; Defs.' Reply 1-2, 4.)[6] Plaintiff's complaint alleges that Randy Feinberg ceased being an owner of the Feinberg brothers' partnership interests on June 30, 2008.  (Compl. ¶¶ 11-12.)  Plaintiff claims that he and Randy Feinberg agreed to employ Eckelmeyer separately after June 30, 2008.  (Id. ¶ 14.) Plaintiff alleges that although Eckelmeyer had access to one of plaintiff's computers between June 30 and October 3, 2008, Eckelmeyer "was not authorized to access information unrelated to

---

[6] Defendants' argument addresses the second element of a claim under § 1030(a)(4) of the CFAA:

> (1) defendant has accessed a "protected computer;" (2) has done so **without authorization or by exceeding such authorization as was granted**; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value."

P.C. Yonkers, 428 F.3d at 508 (emphasis added) (quoting 18 U.S.C.A. § 1030(a)(4)).

the partnerships except with Plaintiff's express consent" (Id. ¶ 16.) Plaintiff also alleges that during this period Eckelmeyer "did not have access to Plaintiff's personal computer in Plaintiff's office." (Id. ¶ 17.) Plaintiff further alleges that after October 3, 2008, Eckelmeyer "had no authority to access the Plaintiff's Bala Cynwyd office, or any of Plaintiff's files without Plaintiff's consent." (Id. ¶ 25.) At bottom, the factual dispute between the parties is stark: defendants claim that Randy Feinberg remained an owner of the Feinberg brothers' partnership interests until the Feinberg brothers signed the Separation Agreement; plaintiff alleges that Randy Feinberg ceased being such an owner on June 30, 2008.

The Separation Agreement does not shed significant light on the dispute, at this stage. The Separation Agreement contains exhibits in which Randy Feinberg agreed, effective June 30, 2008, to sell "all of his shares of capital stock of Feinberg and Feinberg Administration, Inc., a Pennsylvania corporation ("F&F"), representing a 50% ownership interest" and to resign as an employee of F&F. (Defs.' Mem. Ex. B, at internal exhibits F and H.) Neither the complaint nor the Separation Agreement, however, sufficiently explains the role F&F played in the structure of the Feinberg brothers' partnership interests. Furthermore, even though the sale of Randy Feinberg's stock in F&F might have been "effective" as of June 30, 2008, the Separation Agreement states that the sale would take place "[a]t the Closing." (Id. at 5.) In addition, the Separation Agreement contemplates that "[b]etween the Effective Date of this Agreement and the date of Closing" the Feinberg brothers would retain responsibilities for winding up the partnerships, including execution and delivery of stock powers, resignation forms, resolutions, dissolution documents, and withdrawal and indemnification agreements. (Id. at 9-10.)

In other words, the Separation Agreement does not clearly state one way or another whether Randy Feinberg's ownership in the Feinberg brothers' partnership interests continued

past the Effective Date. The Separation Agreement therefore does not make clear whether Randy Feinberg (or Eckelmeyer, as his agent) retained authorization to access the computers in question after June 30, 2008. The dispute between the parties as to when Randy Feinberg ceased being an owner of the Feinberg brothers partnership interests (and, thus, when Eckelmeyer ceased to have authorization or exceeded his authorization to access plaintiff's computers) is therefore a fact question that the court cannot resolve at this stage.[7] Furthermore, under the standards for considering a motion to dismiss, I must assume the factual allegations in plaintiffs' complaint to be true.[8] Accordingly, I conclude that plaintiff has alleged sufficiently, at this stage, that Eckelmeyer did not have authority or that he exceeded his authority to access plaintiff's computers after June 30, 2008.

I will therefore deny defendants' motion with respect to Count I of the complaint, for violation of the CFAA.

### B.    Plaintiff Has Properly Stated A Claim For Breach Of Fiduciary Duty

Defendants further argue that plaintiff does not state a viable claim for breach of fiduciary duty because plaintiff offers only "broad conclusory statements that plaintiff has sustained damages." I conclude that, on the contrary, plaintiff sufficiently alleges the elements of harm and causation as to breach of fiduciary duty.

---

[7] In addition, whether Randy Feinberg continued to share ownership with plaintiff of any *other* partnerships, entities, or interests that might have given him and his agents the right to access plaintiff's computers is a question of fact that the court cannot resolve at this time.

[8] Because the question of when Randy Feinberg ceased being an owner of the Feinberg brothers' partnership interests is a factual dispute, it is premature and unnecessary for the court to address the case law concerning the definitions of "authorization" and "exceeding such authorization" under § 1030(a)(4) of the CFAA.

To prove the harm and causation elements of a breach of fiduciary duty claim in Pennsylvania, the plaintiff must establish that he "suffered injury" and that defendants' failure to act solely for his benefit "was a real factor in bringing about" his injuries. McDermott, 11 F.Supp.2d at 626 n. 18 (citation omitted). A plaintiff alleging a breach of fiduciary duty "need not show the existence of damages other than the offending party's receipt of a benefit that should have inured to the complainant." Synthes (USA) v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184, at *11 (E.D. Pa. July 12, 2007); see also First American Marketing Corp. v. Canella, No. 03-812, 2004 WL 250537, at *8 (E.D. Pa. Jan. 26, 2004) (providing that "it is not necessary to plead specific damages to survive a 12(b)(6) motion [for breach of fiduciary duty]").

Among other things, plaintiff alleges that defendants breached their fiduciary duties to him by violating the CFAA and concealing financial information from him, and as a result harmed him by duping him into accepting the terms of the Separation Agreement:

> Defendants **violated the Computer Fraud and Abuse Act**, invaded Plaintiff's privacy and conspired **to conceal material information** from Plaintiff concerning his financial information **necessary to fairly evaluate the terms of the set-offs and reconciliations** required by the Separation Agreement.

(Compl. ¶ 59.) Plaintiff's allegations of harm and causation as to breach of fiduciary duty are therefore sufficient, at this stage, to raise a reasonable expectation that discovery may reveal evidence of the necessary element. Twombly, 550 U.S. at 555.

Accordingly, I will deny defendants' motion with respect to Count II of plaintiff's complaint for breach of fiduciary duty.

### D.	Plaintiff Has Properly Stated A Claim For Civil Conspiracy

Defendants also argue that the "intracorporate conspiracy" doctrine applies to bar

plaintiff's claim for civil conspiracy and that, in any event, plaintiff fails to state a claim "because

he does not allege damages sustained from the alleged conspiracy" and "must explain what

unlawful acts [defendants] supposedly undertook and how those acts harmed plaintiff."  (Defs.'

Mem. at 16; Defs.' Reply at 7.)[9]  Plaintiff argues that the intracorporate conspiracy doctrine does

not apply to Randy Feinberg's employment of Eckelmeyer because Eckelmeyer may have been

employed by a partnership or by Randy Feinberg as an individual.  (Pl.'s Opp'n 14-16.)  Plaintiff

also argues that he pleaded sufficiently his damages and potential damages from the conspiracy.

(Id. at 14.)  I conclude that whether Eckelmeyer was employed by a corporation, partnership, or

individual is a question of fact that cannot be resolved at this time.  I also conclude that plaintiff

pleaded his damages for conspiracy sufficiently by claiming that defendants conspired to dupe

him into accepting the terms of the Separation Agreement, to his detriment, and to gain

competitive advantage over him in the future.

The intracorporate conspiracy doctrine holds that no claim for conspiracy can arise

between an entity and its employees.  General Refractories Co. v. Fireman's Fund Ins. Co.  337

F.3d 297, 313 (3d Cir. 2003) ("an entity cannot conspire with one who acts as its agent"); Nix v.

Temple Univ., 596 A.2d 1132, 1137 n.3 (Pa. Super. Ct. 1991) ("[A] corporation cannot conspire

within itself.  Generally, the acts of the agents of a corporation are the acts of the corporation.")

(citation omitted).  Plaintiff argues, however, that the doctrine does not apply to partnerships or

---

[9]  Defendants also argue that plaintiff's claim for civil conspiracy fails because there is no
underlying cause of action to support a conspiracy claim.  (Defs.' Mem. at 16.)  I have, however,
denied defendants' motion to dismiss plaintiff's claims for violation of the CFAA and for breach
of fiduciary duty.  Accordingly, defendants' argument as to this issue is moot.

individuals.  (Pl.'s Opp'n 14-16.)  He argues that Eckelmeyer "has worked for [Randy] Feinberg

personally" as well as for the Feinberg brothers' partnership interests, and that "[t]he businesses

that employed Defendant Eckelmeyer are not exclusively corporations."  (Pl.'s Opp'n 15.)[10]  The

Separation Agreement describes the Feinberg brothers' partnership interests as involving a

variety of entities, some of which appear to be partnerships and others corporations.  (Defs.'

Mem. Ex. B.)  The Separation Agreement and the complaint, as well as the parties' briefs, do not

make clear whether Eckelmeyer, as Randy Feinberg's agent, was an employee of a partnership,

of a corporation, or of Randy Feinberg individually.

The parties do not cite, and the court has not found, any cases in which the Third Circuit

or the Pennsylvania Supreme Court has addressed the question of whether the intracorporate

conspiracy doctrine applies to partnerships.  Other courts, however, have held that the doctrine

should only apply to an entity that, like a corporation, is treated as a single entity under the law:

> The reason that courts have applied the doctrine to corporations . . . is because a
> corporation exists as a person only in a legal sense; it can act and speak only
> through its officers, employees, and agents.  In other words, a corporation cannot
> conspire with itself. . . . Corporations have a legal existence, in contrast with
> voluntary unincorporated associations.  In addition, a corporation is a single
> entity, unlike a partnership.

Sirajullah v. Illinois State Medical Inter-Insurance Exchange, No. 86-C-8668, 1988 WL 53210,

*4-5 (N.D. Ill. May 17, 1988) (citations and quotations omitted) (finding that "an inter-insurance

---

[10]  Plaintiff also argues that the intracorporate conspiracy doctrine does not apply to
Eckelmeyer because through the conspiracy he "was effectively benefitting himself in an attempt
to secure future employment with [Randy] Feinberg."  (Pl.'s Opp'n 16.)  Plaintiff has not pleaded
any facts in his complaint, however, to support the conclusion that Eckelmeyer was acting *solely*
for his own personal benefit.  Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999) (exception
to intracorporate conspiracy doctrine exists "when the employees have acted for their sole
personal benefit").  Whether or not Eckelmeyer gained any personal benefit from his actions,
plaintiff alleges that Eckelmeyer, as Randy Feinberg's agent, was acting at least in part for Randy
Feinberg's benefit, not solely Eckelmeyer's own.  (See, e.g., Compl. ¶¶ 29-30, 40-42, 45.)

exchange is not an association" or "a partnership" and therefore comprises "a single, legal entity"); see also People by Abrams v. 11 Cornwell Co., 695 F.2d 34, 41 (2d Cir. 1982), mod. on other grounds, 718 F.2d 22 (2d Cir. 1983) (intracorporate conspiracy doctrine does not apply to partnerships because "[a] corporation is a distinct and fictional legal entity; a partnership is not distinct from its members at all").

In any event, plaintiff buttresses this argument with the assertion that Eckelmeyer also worked for Randy Feinberg in Randy Feinberg's individual capacity. (Pl.'s Opp'n 15.) Because the intracorporate conspiracy doctrine applies, by definition, to corporations, not to individuals, and because the court cannot determine from the complaint and the Separation Agreement whether Eckelmeyer was an employee of a corporation, partnership, or individual, the question of whether the intracorporate conspiracy doctrine applies here is a factual question that the court cannot resolve at this stage.

Lastly, plaintiff has sufficiently pleaded the element of damages with respect to his civil conspiracy claim. Among other things, plaintiff pleaded that defendants conspired "to undermine and/or destroy Plaintiff's trade secrets and proprietary and confidential information for the purpose of interfering with his existing and potential contractual and business relations." (Compl. ¶ 90.) Plaintiff also pleaded that "[a]s a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered financial hardship, including out of pocket expenses, fees, as well as lost business opportunities in the negotiation of the Separation Agreement . . . ." (Id. ¶ 97.) Plaintiff's complaint also alleges that the goal of defendants' "conspiratorial misconduct" was "to assist Defendants' adversarial position in financially sensitive negotiations in June to October 2008, and now to aid their business competition against Plaintiff" (id. at 1); that defendants "conspired to manipulate the value of set-offs and accounting reconciliations arising

from the separation of partnership interests" (id. ¶ 1); and that defendants "conspiratorial misconduct" was "designed to . . . conceal material information relating to the financial terms of the Separation Agreement" (id. ¶ 48).

For the purposes of this motion, such allegations sufficiently detail the harm defendants may have caused plaintiff by means of their alleged conspiracy:  plaintiff has alleged that defendants' conspiracy harmed him by duping him into accepting the terms of the Separation Agreement at less than the accurate value and will harm him by giving defendants competitive advantage over him in the future.  Twombly, 550 U.S. at 555; Cohen v. Pelagatti, 528 A.2d 657, 658 (Pa. Super. Ct. 1987) (as to civil conspiracy claim, "the existence of identifiable damages, even if nominal, must be established by the facts alleged in support of the cause of action; it is the fact of damages, rather than the amount, that is the key inquiry").

I will therefore deny defendants' motion to dismiss Count V of the complaint, for civil conspiracy.

## IV.    Conclusion

For the foregoing reasons, I conclude that the exception to the release contained in the Separation Agreement covers plaintiff's claims for violation of the CFAA and for breach of fiduciary duty, assuming for the purposes of this motion that plaintiff's interpretation of the exception to the release is true.  I also conclude that plaintiff has properly stated claims for violation of the CFAA, for breach of fiduciary duty, and for civil conspiracy.  I will, however, grant defendants' motion to dismiss plaintiff's claims for misappropriation of trade secrets and for invasion of privacy, without prejudice to the right of plaintiff to file an amended complaint within twenty days.  An appropriate order follows.